GREINER<br>v.<br>PRENDERGAST.

The plea of prescription was properly disregarded by the court below. The defendant was absent from the State. Although· there was a debt due to *Prendergast* by *Greiner* which might have been attached for an ordinary indebtedness, and even if it be conceded that the existence of attachable proper-- ty within the State would form an exception to the rule *Contra non valentem*, &c., yet the exception would not apply in the present case. *Greiner's* claim is for damages *ex delicto*. An attachment will not lie in such a case. *Prewitt* v. *Carmichael*, 2 Ann. R. p. 943.

W.e think the injury sustained was less than was assessed by the court below; and that, under the evidence, an allowance of $360 would be ample.

Judgment reversed, and judgment for plaintiff for $360, and costs in tho court below; those of this appeal to be paid by the plaintiff.

| 3 | 377 |<br>| 46 | 729 |

## HUNTINGTON v. LOWE et al.

Where a quantity of pork in hogsheads is sold, without any express stipulation, or exclu· sion, of warranty, and the purchaser, after examining some of the hogsheads, on the assu·· rance of the broker employed to make the sale that every piece had been examined by an experienced and skillful agent and found to be' sound, makes no farther inspection, the ven- dor will be bound by an implied warranty as to the quality. C. C. 2457. And though an implied warranty may not extend to apparent defects, this exception cannot be extend- ed to a case in which a representation was made calculated to quiet the vigilance of the purchaser, with regard to merchandize the inspection of which would be attended with inconvenience.

Where a purchaser of a quantity of pork in hogsheads discovers, after the purchase, that a part of it is unsound, he may retain the sound hogsheads, and return the unsound. The rule that the redhibitory vice of one of several things sold together gives rise to the redhibition of all, does not apply to such a case.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J. *W. D. Hennen* and *W. H. Hunt*, for the plaintiff. It is clear that the plaintiff has properly limited his action to the redhibition of that por-- tion of the pork which was unsound, and that he was even compelled to affirm the contract as to the other portion which was not effected with the redhibitory defect. For in the sale of several things together, which being in- dependent of each other do not form a whole, and do not derive any increase of value from their union, the redhibitory action will lie only for the things found defective, and the contract must be carried into effect as to the rest. Such is the clear inference from art. 2518 of the C. C. *Ledoux* v. *Armor*, 4 Rob. p. 381. 6 Mart. 696. 15 Mart. 100. Pothier, Vente, 528. Troplong, Vente, t. 2, p. 46, 578. It has been shown that the things purchased were affected with a redhibitory vice at the time of the sale, and that defendants, or their agent, knew that the de- fects exisited at the time. That defendants are responsible for the acts of their agent. See Story on Agency, 452. 15 La. 170. 10 Rob. 167. It is pretended by the defendants that the defect was apparent, and one therefore against which they did not warrant under the 2497th art. of the C. C. which declares, that, " apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices." But the simple inspection here meant is that, which can be made by every ordinary pur- chaser, and in which the detection of the redhibitory defect does not require any particular skill, or difficult or inconvenient operation: as in the sale of a

HUNTINGTON
*v.*
LOWE.

horse that has lost an eye, or a negro that has lost a hand. The circumstances of this sale fall precisely within art. 1841, no. 4, of the C. C. A false assertion of the quality of an object will constitute such an artifice as will invalidate an agreement, if the object be one that requires any difficult or inconvenient operation to discover the truth or falsity of the assertion. Sales of any article by a false sample of goods in packages or bales, which cannot without inconvenience be unpacked or inspected, are referable to this rule. The defects in the pork were not apparent defects within the meaning of art. 2497.

*R. N.,* and *A. N. Ogden,* for the appellants. The judgment of the court was pronounced by

SLIDELL, J. This case presents a reclamation by plaintiff, arising out of a purchase of pork made by him from the defendants. Of the quantity purchased, about one-half proved to be unsound. The plaintiff claimed the difference in value exhibited by an auction sale of the unsound, made about three weeks after the sale, as compared with the alleged market value of a sound article ; and also damages for the charges and expenses incurred by its shipment to his correspondent in Mobile; who sold a small part of the lot there, and upon discovering the unsoundness reshipped it to the plaintiff. The total claim was for $480. The district judge gave a judgment for $180 73; and the defendants appealed.

The purchase was made on the 21st January, 1847. The plaintiff immediately shipped the pork to Mobile, and, on the 30th January, sold a few hogsheads to a party, who bought without examination, on the representation of plaintiffs agent; but, on opening it a day or two afterwards, the purchaser discovered it to be in very bad condition, and an allowance was made to him of about seventy-five per cent. The agent reshipped what was unsold to plaintiff, who had it examined, and finding about half of it to be unsound, tendered the unsound portion to the defendants, and demanded the proportional return of the price. This offer the defendants refused, unless plaintiff would return the whole. A very great advance in the market value had taken place in the interval. The plaintiff then had the damaged portion sold at auction, and it produced a price a little below what he paid the defendant.

There were several witnesses examined before the district judge, two of whom say that the pork had been offered to them before the plaintiff bought, and they refused to buy, being dissatisfied with its condition. One of them declares expressly that, it was a very bad lot and unsound. Another, that he found several pieces damaged, and refused for that reason to buy. It results conclusively from the evidence that, the unsoundness existed at the time of the sale; and that even if some portions might not have been actually unsound at that time, they ultimately became so from bad curing.

The defendants have placed their principal reliance on the testimony of their broker, who was called as a witness by the plaintiff. He states that the pork was in hogsheads, which were headed up, except those which were examined by himself and the plaintiff's clerk. They tried these, and found their contents sound. He represented, at the time, that every piece had been examined by an experienced and skilful agent for the defendants, with the view of its being shipped to England, and every piece was sound and in order. He also stated to the plaintiff, as one reason why the defendants had been prevented from shipping the pork, the high rate of freights. The witness further stated that he offered the plaintiff's clerk to open as many hogsheads as he desired, but he declined having any more opened, and expressed himself satisfied with what he had seen, saying that he was a good judge. He further deposed that, on

his statements and the clerk's examination, the plaintiff purchased without fur- Huntington
ther guarantee, and that there was no attempt on his part, or those of his prin-        *v.*
cipals, to conceal or misrepresent.                                              Lowe.

There is no reason to doubt that his representation did have the effect of
discouraging further examination; and, although there was no express stipula-
tion of warranty, it is clear that there was no exclusion of it. We consider
the representation as excusing the plaintiff from a more thorough examination
of the article; and we attach more weight to the representation acknowledged
to have been made, from the fact established by another witness that, the broker
who made the sale to the plaintiff had offered the lot to another party, who de-
clined the purchase because he found some pieces damaged.

As there was no express exclusion of warranty, the warranty implied by the
law attached to the contract. The doctrine of *caveat emptor*, as known to the
common law, even if it would go so far as to relieve a vendor from the effects of
such a representation as was made in the present case, cannot be invoked
against our own express legislation and jurisprudence, which recognize the im-
plied warranty of quality as well as of title. Civil Code, 2451. It is said, how-
ever, that the implied warranty does not extend to apparent defects, which are
defined by our Code to be '· such as are apparent by simple inspection." This
is true. But the enquiry remains, what are apparent defects? How far is it
to be considered applicable to the sale of merchandize packed in such a manner,
or otherwise so situated, as to make its thorough examination inconvenient?
See upon this point, Duranton, vol. 16, lib. 3, tit. 6, §310, and the opinion of
Judge Watts in *Millaudon* and *Morgan* v. *Price* and *Frost*. We do not however,
think it necessary to say whether, under ordinary circumstances, the defective
character of the merchandize in question, which was in closed casks, was an
apparent defect within the fair intendment of the Code, that is to say, whether
it was the buyer's duty to protect himself by having the casks opened, and then
to notice not only the patent unsoundness of portions of the pork, but the de-
fective curing which would ultimately result in unsoundness of other portions.
It would clearly be carrying the exception as to apparent defects too far, to ex-
tend it to a case in which a representation was made calculated to quiet the
vigilance of the purchaser with regard to merchandize packed in casks, and the
inspection of which was attended with some inconvenience. A witness, who
was in the employ of the defendants, states, that he had examined the merch-
andize before the defendants bought, that he rejected some portions, and that
the lot, as selected, was sound, and was all carefully repacked with additional salt.
This testimony relieves the defendants from any moral imputation, but
cannot destroy the legal effect of the representation made to the plaintiff
by their broker. Nor can we consider that the witness' opinion as to the qual-
ity of the pork overbears the testimony of the other witnesses as to the un-
soundness of a portion of it, which, we think, is conclusively established.

But it is said that, when the plaintiff was dissatisfied with the sale, he should
have tendered the return of the whole, and had no right to keep the sound
part, reaping the profit of an improved market, and returning only the unsound.
The rule that the rehibitory vice of one of several things sold together gives
rise to the redhibition of all, applies to a limited class of cases; those where
one of the things would not have been bought without the other. The illustra-
tions given in our Code are, a pair of matched horses or a yoke of oxen. The
rule is obviously a reasonable one, and we have borrowed it from the roman law.
Quùm autem jumenta paria veneunt, edicto expressum est ut, cùm alterum in

HUNTINGTON    eâ causâ sit ut redhiberi debeat, utrumque redhibeatur; in quâ re tâm emptori
v.       quam venditori consulitur, dum jumenta non separantur.   But when the
LOWE.     things are independent of each other, the redhibitory action lies for that which
is affected with the redhibitory vice.   The example given by the civilians is, a
lot of unmatched horses or a flock of sheep.   If one proves to have been
unsound, the partial dissolution of the sale is permitted.   See Duranton, vol.
16, § 319.   Troplong, Vente, 578.   Voet, lib. 21, tit. 1, de Ædil. edict.   It is
to be observed, however, that this is not strictly an action of redhibition, but of
quanti minoris.   The plaintiff desired to exercise the right of redhibition, but
was prevented from doing so by the refusal of the defendants.

The plaintiff has asked an amendment of the judgment in his favor, but as
the application was not seasonably made it cannot be considered.   C. P. 890.

*Judgment affirmed.*