## A. BALDWIN SALES CO., Inc., v. PETERSON.

### No. 1044.

Court of Appeal of Louisiana. First Circuit.

Oct. 5, 1932.

L. V. Cooley, Jr., of Slidell, for appellant.

Gus A. Fritchie, of Slidell, for appellee.

ELLIOTT, J.

A. Baldwin Sales Company, Inc., sold and delivered to Mrs. John Peterson a machine for making sausage and preserving fresh meat. The sale by written act bears date March 14, 1930, but the machine was not installed until about two weeks later. The price of the machine was $1,285.50, of which $125 was paid in cash and the balance divided up into 23 notes payable monthly. The machine was delivered and erected, but none of the monthly installments were paid.

The plaintiff, alleging the execution of the notes representing the purchase price, the existence of a privilege on the machine in its favor and nonpayment, brought suit, had the machine sequestered, prayed for judgment against Mrs. Peterson for the balance due; prayed that the sequestration be maintained and that the vendor's privilege on the machine be recognized and enforced, etc.

The defendant admits the purchase of the machine, but denies owing the price stipulated on said account. She avers that the machine did not work satisfactorily and that she made many demands on the plaintiff to fix it, and that plaintiff was never able to do so; that, due to the failure of the machine to refrigerate, her sons, who were operating the machine, were forced, after losing much meat, to quit their business, due to the insufficiency and failure of the refrigerator.

She prays that plaintiff's demand be rejected and for judgment in her favor against the plaintiff in reconvention for the $125 paid, and for general and equitable relief.

There was judgment in favor of the plaintiff and against the defendant rejecting defendant's demand in reconvention, but judgment in favor of the defendant and against the plaintiff, recognizing plaintiff as owner of the machine and declaring it to be subject to plaintiff's order.

The plaintiff has appealed.

The defendant does not pray in her answer that the sale be rescinded, but she offered evidence on the trial to show the existence of redhibitory defects in the machine at the time of the sale; that it would not work nor give satisfactory service, and would not meet the purpose for which it had been bought and sold; that the defects existed in the machine at the time of the delivery, of such nature that its use was so inconvenient and imperfect that it must be supposed that she would not have purchased it had she known of the vices, and that evidence was received without objection.

The plaintiff in turn offered rebuttal evidence, the purpose of which was to show that the vices testified to in behalf of the plaintiff did not exist.

The district judge in a written opinion characterized the defense as redhibitory, and that defendant's right to have the sale rescinded was the question in the case, and that vices existed justifying the rescission of the sale.

The plaintiff contends in its brief that the lower court erred as to the existence of vices at the time of the sale.

The evidence is conflicting. Defendant's two sons operated the machine in her behalf. They say that it worked very well for about a week after it was installed, but after that time it would not refrigerate nor keep meat fresh and in good condition, which was ab-

solutely necessary to be done for success in the business in which they were engaged, and which was the purpose for which the machine had been bought by the defendant and sold by the plaintiff.

They testified that numerous complaints were made by them to the plaintiff over the telephone informing it of the fact that the machine would not work; that plaintiff sent its agents time after time, they estimate 10 or 12 times, to work on the machine, but that it could not be made to work.

Defendant's business was at Slidell. Her sons testify that they called in an electrician at Slidell in order to try to make the machine work, by giving it more current; that the necessary current was supplied, but the machine would not refrigerate; that, after working with it about a month, they quit trying to operate it and offered it back to the plaintiff.

The defendant's testimony is corroborated to some extent by neighbors who say that defendant's sons used their phones, but they did not know for what purpose. They are corroborated by the electrician of the power company at Slidell, who says that he went to their place of business and supplied more current and power than the machine had when first installed; that the power and current were sufficient, but the machine failed to properly refrigerate; he therefore quit trying to make it operate.

Plaintiff's record shows that it sent agents at least four times to work on the machine while defendant was trying to operate it, but their stenographer testifies that no complaints were received at the office. As against her testimony that no complaints were received, we have the admissions in the form of work orders and testimony, that plaintiff sent agents at least four times to have the machine worked on. If it be supposed that plaintiff did not send its agents as often as defendant contends, yet it seems too often, if the machine be required to give satisfaction.

Defendant's sons' testimony that they lost meat is corroborated by the testimony of neighbors.

Plaintiff introduced evidence that the machine worked all right and that its breaking down was due to defendant's fault; that one of defendant's sons put a block of wood in the machine in such a way that it tended to produce trouble. The machine was giving trouble, and defendant tried to make it work.

We are not satisfied that defendant did anything to make trouble; we look on that defense as not established. The agent, who erected the machine, admits in his testimony that, after he had installed and turned it over to defendant's sons, it had a leaking valve.

He also states in his testimony that the voltage supplied for the operation of the machine was low; that the machine could not be made to work properly with the voltage obtainable at Slidell. He says, however, that the low voltage was not the fault of his company.

The plaintiff was required to set up and install the machine so it would work, and he installed it with a leaking valve. His further admission that the voltage was low is tantamount to saying that power sufficient to operate was not present at the time the machine was installed. Under plaintiff's own showing, we are justified in concluding that there was something wrong from the start.

A matter which gives us concern is the showing against the defendant that her attorney wrote a number of letters to the plaintiff in which the plaintiff was requested to take back the machine, and he did not mention in any of them that it would not keep fresh meat in good condition, the purpose for which it had been bought and sold.

The attorney for the defendant took the stand and testified in defendant's behalf that her sons in talking with him about the case, stated that their complaint against the machine was that it would not work, did not refrigerate, but that their mother, Mrs. Peterson, was unwell, and that he was endeavoring to get a compromise, and did not on that account mention in his letters the ground of their complaint. For our part in acting on the case we give to the failure of defendant's attorney to mention in the letters produced that the machine was unsatisfactory because it would not refrigerate all the weight and effect that we feel that such an omission should receive and look on the explanation of the attorney as if not made; and, having done so, taking into account the entire testimony in the case, and giving effect to the established and undisputed facts on the subject, it still remains established that something was wrong with the machine almost from the first week after it was installed and delivered. It did not and would not function so as to refrigerate and keep in good condition fresh meat for a reasonable time, and plaintiff, notified of the failure, sent its agents and employees to work on it from time to time and as heretofore stated, but it could not be made to function and properly refrigerate. Its functioning was so imperfect that a proper case for redhibition existed under the law. But under the evidence adduced we do not think the court erred in refusing to condemn the plaintiff to return the $125 received.

The judgment appealed from appears to us to be correct in every respect.

Judgment affirmed; plaintiff-appellant to pay the cost in both courts.