STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

24-32


COLLEEN BOUTTE AND EARL BOUTTE

VERSUS

CENTERPOINT ENERGY RESOURCES CORP., ET AL.

******************

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, DOCKET NO. 2019-5641
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

******************

CHARLES G. FITZGERALD
JUDGE

******************


Court composed of Elizabeth A. Pickett, Charles G. Fitzgerald, and Wilbur L. Stiles, Judges.


**AFFIRMED.**

**Steven Broussard**
**Broussard Knoll Law Firm**
**1301 Common Street**
**Lake Charles, LA 70601**
**(337) 439-2450**
**Counsel for Plaintiffs/Appellants:**
**Colleen Boutte and Earl Boutte**

**G. Bruce Parkerson**
**Mark E. Young**
**Lauren B. Dietzen**
**Meredith R. Durham**
**Matt T. Habig**
**Plauché Maselli Parkerson LLP**
**701 Poydras Street, Suite 3800**
**New Orleans, LA 70139**
**(504) 582-1142**
**Counsel for Defendants/Appellees:**
**CenterPoint Energy Resources Corp. and**
**Old Republic Insurance Company**

**Thomas M. Flanagan**
**Anders F. Holmgren**
**Kansas M. Guidry**
**Flanagan Partners LLP**
**201 St. Charles Avenue, Suite 3300**
**New Orleans, LA 70170**
**(504) 569-0235**
**Counsel for Defendants/Appellees:**
**CenterPoint Energy Resources Corp. and**
**Old Republic Insurance Company**

**FITZGERALD, Judge.**

Plaintiffs, Colleen Boutte and Earl Boutte, appeal from a judgment for Defendants, CenterPoint Energy Resources Corp. and Old Republic Insurance Company (collectively "CenterPoint"), in an action for damages caused by a rear-end collision.

## SUMMARY OF FACTS AND PROCEDURAL HISTORY

This case involves a December 2018 automobile accident on Alamo Street in Lake Charles, Louisiana. Alamo Street is a two-way road that runs east-west. On the date of the accident, CenterPoint was repairing an underground gas leak in the westbound lane of Alamo Street. A three-man crew had cut a 5-by-5-foot hole to access the leak and had placed an excavator on the east side of the hole to protect them from oncoming westbound traffic. The work zone was surrounded by a line of orange cones running around the worksite and back to the curb, and the workers were wearing reflective safety vests. By all accounts, it was a clear day.

Plaintiff Colleen Boutte turned onto Alamo Street from Ryan Street and was driving east. Two cars were in front of her, and one car driven by nonparty Cassie Mallett-Soliz was directly behind her. Colleen saw the work zone slightly before the intersection of Alamo and Hodges Street. Near the worksite, the line of eastbound cars stopped to allow westbound cars to proceed. It was during this stop that Mallett-Soliz began looking at a bakery to her left.

Thereafter, the first eastbound car proceeded past the work zone and then slowed to turn left onto Hodges Street. The second car and Colleen also safely passed the work zone and slowed behind the turning car. Mallett-Soliz next pulled ahead but, distracted by the bakery, failed to slow down for the turning car. Mallet-Soliz turned her eyes back to the road just before impact but could not brake before rear-ending Colleen.

One of the CenterPoint workers heard the contact.  He described the sound as "minor" and "just like a little bump."  Following the accident, Colleen exited her car and spoke with Mallett-Soliz before taking photos of the vehicles and texting them to her employer.  Colleen then moved her car off the roadway and called an ambulance which transported her from the scene.

Colleen and her husband ultimately filed a petition for damages against CenterPoint and its insurer.  Plaintiffs did not sue Mallett-Soliz.

The case was tried before a jury in June 2023.  The jury found by 9-3 vote that CenterPoint was not at fault in causing the accident.  The trial court signed a written judgment in conformity with this verdict on June 22, 2023.  Plaintiffs appealed.

On appeal, Plaintiffs assert the following assignments of error:

Assignment of Error No. 1 – The jury's verdict should be set aside due to the trial court's continuous mishandling of the trial, culminating in the failure to investigate known jury misconduct.

> A.  The trial court cut Plaintiffs' *voir dire* off just after several jurors expressed concerns about lawsuits, a mistake that would rear its head later in trial.  Plaintiffs' *voir dire* was limited to about five minutes per juror.

> B.  The trial court continuously commented on the evidence in front of the jury and unfairly limited questioning of witnesses.

> C.  After learning that jurors made anti-lawsuit comments during trial to other jurors, the trial court refused to investigate and assess the extent of the misconduct.

Assignment of Error No. 2 – The trial court committed reversible error by failing to charge the jury pursuant to La.R.S. 32:235.

## LAW AND ANALYSIS

Plaintiffs' assigned errors are process-based challenges to the jury verdict.  The challenges implicate the trial court's discretion, and we review them on appeal for abuse of that discretion.

2

**Assignment of Error Number 1**

Plaintiffs divide the trial court's alleged misconduct into three categories. Each category is addressed below.

### *Improper Limitations on Voir Dire*

The first category of alleged misconduct concerns the trial court's time limitation on voir dire. The trial court imposed a ninety-minute limit on each party. Although not addressed by Plaintiffs, La.Code Civ.P. art. 1763(B) gives a trial court broad discretion over the scope and extent of voir dire, and its rulings will not be disturbed on appeal absent an abuse of that discretion. *Trahan v. Odell Vinson Oil Field Contractors, Inc.*, 295 So.2d 224 (La.App. 3 Cir. 1974).

Plaintiffs did not object to the time limitation during voir dire. Yet now on appeal, they argue that this limitation was improper. Plaintiffs note that the court seated twenty-one jurors for the initial voir dire. They explain that considerable time was spent on two jurors who were excused for cause. And at the one-hour mark, their "counsel voiced he needed more time." Nevertheless, the trial court ended Plaintiffs' voir dire at the originally allotted ninety-minute limit. Because of this, Plaintiffs claim they were unable to question approximately half of the twenty-one jurors.

On the other hand, CenterPoint argues that a review of this issue is not necessary because Plaintiffs waived the argument by failing to object. In support, CenterPoint clarifies in its brief that "[a]lthough [Plaintiffs] cite their counsel's discussion with the trial judge (at the one-hour mark of questioning) about his concern that 30 more minutes might not be enough, they do not point to any specific objection to the court's 90-minute limit." Additionally, Plaintiffs made no objection when their time ran out. Nor did Plaintiffs proffer any questions that they supposedly did not have time to ask.

"Ordinarily, appellate courts will not consider issues raised for the first time on appeal, which the lower court has not addressed." *Singleton v. Dillard Univ.,* 23-53, p. 10 (La.App. 4 Cir. 10/4/23), 382 So.3d 902, 909.

In sum, Plaintiffs did not preserve this issue for appeal: they failed to object when the trial court imposed the time limitation, failed to object when the trial court advised them that time was up, and failed to proffer the questions they were prevented from asking. Thus, Plaintiffs' arguments about improper limitations on voir dire are waived.

### *Improper Comments by the Trial Court*

The second category of alleged misconduct concerns comments made by the trial court in the presence of the jury. Plaintiffs contend that these comments violate La.Code Civ.P. art. 1791, which states: "The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted."

Plaintiffs point to fifteen comments that the trial court made while in the presence of the jury: six of the comments terminated lines of questioning that were irrelevant and would cause jury confusion, two of them amount to reasons for ruling on objections, and the remaining seven encouraged counsel to move things along.

Unlike Plaintiffs, CenterPoint argues that none of the comments were improper. But even still, it suggests that Plaintiffs did not preserve this issue for appeal. We agree.

A party's failure to object to comments made by the trial court during a jury trial was addressed in *Johnson v. H.W. Parson Motors, Inc.*, 231 So.2d 73 (La.App. 1 Cir. 1970). There, the first circuit explained:

4

[N]o effort was made by counsel for appellants either at that stage of the trial or in conjunction with the trial court's charging of the jury to bring this matter to the attention of the trial court so that the jury could be expressly admonished to disregard the comment. We feel counsel for appellants should have made his objection before the trial court or if he felt the statement so prejudicial, he should have moved for a mistrial; instead, counsel for appellants was willing to permit the jury to consider the case and only after appellants have received an unfavorable verdict and judgment is this error urged as a basis for reversal and a new trial. We feel under the circumstances appellants waived the objection and cannot now be heard to complain[.]

*Id*. at 78–79. See also *Franks v. State National Insurance Company*, 22-169 (La.App. 3 Cir. 1/25/23), 355 So.3d 1174, *writ denied*, 23-259 (La. 4/18/23), 359 So.3d 512, where a different panel of this court quoted *Johnson*, 231 So.2d at 78–79, in reaching the same conclusion as to waiver.

Like *Johnson* and *Franks*, Plaintiffs here failed to contemporaneously object to any of the alleged improper comments by the trial court. The objections could have been made outside of the jury's presence. But none were made. Nor did Plaintiffs proffer any of the questions that they were prevented from asking. Therefore, Plaintiffs' arguments about improper comments are waived.[1]

---

[1] Beyond this, La.Code Civ.P. art. 1631(A) states: "The [trial] court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial, so that justice is done." Hence, the trial court does not abuse its discretion by encouraging counsel to move things along. *McCoy v. Calamia*, 94-1274 (La.App. 3 Cir. 4/5/95), 653 So.2d 763, *writ denied*, 95-1091 (La. 6/16/95), 655 So.2d 336. Nor does the trial court abuse its discretion by not allowing a line of questioning that is "irrelevant and would tend to confuse the jury." *Calhoun v. Federated Rural Electric Ins. Co.*, 571 So.2d 672, 677 (La.App. 3 Cir. 1990), *writ denied*, 577 So.2d 14 (La.1991). Nor does the trial court abuse its discretion for giving reasons for ruling on an objection. *McCoy*, 653 So.2d 763. These rules dispose of all fifteen alleged improper comments by the trial court.

And there is more. Any prejudice from the comments would have been cured by the trial court's closing jury instructions: "If I've made comments during the trial . . . they were not intended to indicate in any way how you should decide a question of fact or whether you should believe or disbelieve a particular witness." Later in its instructions, the trial court explained: "You should not draw any inference against a lawyer or his client because of an objection or how I ruled on objections." The trial court then cautioned the jury: "Your determinations must be based solely on the evidence." Similarly, in *Calhoun*, 571 So.2d at 678, "the trial judge instructed the jury that only the testimony of the witnesses was to be considered and that the comments that he or the attorneys made were to be disregarded. The charges were sufficient[.]"

5

### *Improper Handling of Jury Misconduct*

In this third category of alleged misconduct, Plaintiffs argue that de novo review is warranted due to the trial court's mishandling of known juror misconduct.

Oversimplifying slightly, after Plaintiffs rested their case-in-chief, the trial court was informed by the jury pool manager of potential improper conduct by some jurors. One juror reported to the jury manager that she overheard other jurors speaking in a derogatory manner about lawsuits and plaintiffs in general. According to the jury manager, the reporting juror was upset by these comments.

When the alleged misconduct surfaced, Plaintiffs' counsel asked the trial court to question the reporting juror individually. The trial court declined, explaining that it would rather talk to the jury as a group. Plaintiffs' counsel responded, "Okay. All right." The trial court then asked the jury members to raise their hand if they overheard the discussions that had been reported. No one responded. At this point, Plaintiffs' counsel again asked the trial court to question the jurors individually, suggesting that the case was otherwise headed for a mistrial. This request was also denied.

As CenterPoint correctly points out, Plaintiffs did not move for a mistrial. Nor did Plaintiffs object to the case proceeding to verdict before this jury. Instead, they waited for the jury to render its decision. This was a tactical decision. Yet now, with an unwanted outcome, Plaintiffs seek reversal and de novo review, arguing that the nature and extent of the misconduct is unknown.

We are once again faced with an objection that is being raised for the first time on appeal. As previously explained, appellate courts will generally not consider issues which the lower court has not addressed. *Singleton*, 382 So.3d 902. Furthermore, appellate courts have found that arguments of misconduct are waived when "'counsel for appellants was willing to permit the jury to consider the case and

only after appellants have received an unfavorable verdict and judgment is this error urged as a basis for reversal[.]'" *Mobley v. General Motors Corp.*, 482 So.2d 1056, 1061 (La.App. 3 Cir. 1986) (quoting *Johnson*, 231 So.2d 73, 79), *writ denied*, 486 So.2d 735 (La.1986).

Simply put, we agree with *Mobley*, 482 So.2d 1056: Plaintiffs' arguments for reversal and de novo review based on jury misconduct are waived.

And thus, Plaintiffs' first assignment of error is without merit.

**Assignment of Error Number 2**

In this assignment, Plaintiffs seek de novo review because the trial court declined to give one proposed jury instruction. Specifically, Plaintiffs requested that the jury be instructed about La.R.S. 32:235(B), which states:

> B. Local municipal and parish authorities in their respective jurisdictions shall place and maintain such traffic control devices upon highways under their jurisdiction as they may deem necessary to indicate and to carry out the provisions of this Chapter, regulations of the department and commissioner adopted pursuant hereto, and local traffic ordinances adopted pursuant to the authority granted by R.S. 32:41 and R.S. 32:42. All such traffic control devices hereafter erected shall conform to the department's manual or specifications. If any such device hereafter erected by a political subdivision of this state fails to conform to the manual or specifications, payment of any funds allocated to that political subdivision shall be withheld by the department until the standards established by the department are complied with.

According to Plaintiffs, "Louisiana Revised Statute 32:235(B) is relevant to whether [CenterPoint's] placement of traffic control devices on city roads must conform to the DOTD's Manual." The trial court, in turn, declined to give the proposed charge.

The standard of review for jury instructions was addressed in *Adams v. Rhodia, Inc.*, 07-2110 (La. 5/21/08), 983 So.2d 798. In that case, the supreme court explained:

7

Louisiana jurisprudence is well established that an appellate court must exercise great restraint before it reverses a jury verdict because of erroneous jury instructions. Trial courts are given broad discretion in formulating jury instructions and a trial court judgment should not be reversed so long as the charge correctly states the substance of the law.

*Id*. at 804.

"Adequate jury instructions are those which fairly and reasonably point out the issues and which provide correct principles of law for the jury to apply to those issues." *Id*. And although the trial court must correctly advise the jury of the applicable law, "[t]he trial judge is under no obligation to give any specific jury instructions that may be submitted by either party[.]" *Id*.

Here, the trial court did not abuse its discretion in rejecting Plaintiffs' proposed instruction: it was unnecessary and risked jury confusion. In other words, La.R.S. 32:235(B) vaguely refers to the "department's manual or specifications" and contains terms that are not clearly defined. Other language in La.R.S. 32:235—which was not included in the proposed charge—clarifies that the "department's manual or specifications" specifically refers to the Federal Highway Administration's Manual on Uniform Traffic Control Devices, which was adopted by the Louisiana Department of Transportation and Development. And importantly, the parties agree that this Manual applied to CenterPoint's traffic control setup in this case. Thus, further instruction on the applicability of the Manual was unnecessary.

But even still, Plaintiffs argue that "the trial court's refusal to give this charge deprived Plaintiffs of being able to discredit [CenterPoint's] witnesses and show the jury that [CenterPoint] was obligated to follow DOTD regulations on this city road." Plaintiffs contend that the Manual required the presence of flaggers to alert drivers to the work area. But the trial court correctly pointed out that expert testimony on

8

this issue was presented at trial: Plaintiffs' expert testified that flaggers were required under the Manual; CenterPoint's expert testified that flaggers were not required. Additionally, the relevant portions of the Manual were admitted into evidence. Hence, Plaintiffs' proposed instruction would not assist the jury.

To summarize, the trial court adequately instructed the jury on the applicable law, including Plaintiffs' burden of proof; the elements of tort liability; the allocation of fault; the standards governing motorists in Louisiana; and the standards governing public utilities doing roadwork on public roads, such as warning motorists of obstructions and hazards and facilitating the movement of traffic through work zones. By contrast, the proposed jury charge was unnecessary and risked jury confusion. The trial court therefore did not abuse its discretion in declining to give it to the jury.

Plaintiffs' second assignment of error is without merit.

## DISPOSITION

The trial court's judgment of June 22, 2023, is affirmed. The costs of this appeal are assessed to Plaintiffs, Colleen Boutte and Earl Boutte.

**AFFIRMED.**